UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **STEVEN GRANGER** * | * | **CIVIL ACTION** |
| **VERSUS** * | * | **NO. 15-477** |
| **BISSO MARINE**, and **BOLLINGER SHIPYARDS** | * * | **SECTION "L" (3)** |

## ORDER & REASONS

Before the Court is Defendant Bollinger's Motion to Exclude the Trial Testimony and Expert Report of Robert Borison, R. Doc. 69, Defendant Bisso's Motion to Exclude Borison, R. Doc. 67, Plaintiff Granger's Motion in Limine to Exclude Expert Report and Trial Testimony of Kenneth Boudreaux, Ph.D., and Plaintiff Granger's Motion to Exclude Documents and Witnesses. R. Doc.75. R. Doc. 36. Having reviewed the parties' briefs, the applicable law, and the statements made at oral argument, the Court now issues this Order & Reasons.

### I.   BACKGROUND

This case involves a trip and fall accident aboard the L/B Super Chief, a pipe-laying barge, owned by Defendant Bisso Marine. R. Doc. 36-2 at 1–2. At the time, Plaintifff, Granger, was an employee of Power Dynamics, LLC, ("PDI"). R. Doc. 36-2 at 1. PDI was hired by Bisso Marine to perform the installation of hydraulic/mechanical systems on the Super Chief. R. Doc. 36-2 at 1. Granger was a member of the crew assigned to the hydraulic/mechanical systems project.

Bisso Marine also contracted with Defendant Bollinger Shipyards ("Bollinger") to perform renovations and modifications to the Super Chief in preparation for upcoming jobs. R. Doc. 36-2 at 2. The Super Chief was berthed at Bollinger's shipyard in Amelia, Louisiana, while

1

the two contractors performed the work. There was no legal relationship between PDI and Bollinger other than that of fellow-contractors hired to perform separate services aboard the Super Chief. R. Doc. 36-2 at 2.

Bollinger was instructed to remove, refabricate, and reinstall the roof of welding Stall Three, one of four separate welding stalls on the Super Chief. R. Docs. 36-2 at 2; 36-3 at 4. Bollinger was not hired to repair, modify, or otherwise renovate the roof of the adjacent Stall Two. After Bollinger reinstalled the roof of Stall Three, the new roof was approximately 2.5 inches higher than the roof of Stall Two, creating a gap between the Stall Three roof and an angle iron attached to the roof of Stall Two. R. Doc. 46 at 3. The angle iron itself jutted out approximately 3 inches above the roof of Stall Two. R. Doc. 46 at 3.

On the date of the accident, contractors PDI and Bollinger were both performing work in the vicinity of the four separate welding stalls. Granger came aboard the Super Chief in order to install plumbing in each of the welding stalls in his capacity as a PDI employee. R. Doc. 36-3 at 4. Granger allegedly sustained injuries after he tripped while walking from the roof of Stall Two towards the roof of Stall Three. In his Complaint, Granger alleges that the replacement of the Stall Three roof and the resulting height differences between the two adjacent roofs created a trip hazard, and claims that he caught his foot in the gap created between the angle iron attached to the roof of Stall Two and the new raised height of the rooftop of Stall Three. R. Doc. 1 at 2–3. However, in his deposition Granger stated that he believed "the thing that contributed to my accident was the angle iron [on Stall Two] not being removed properly," and denied that the gap created because of the height difference between the two stall roofs contributed to the fall. R. Doc. 36-3 at 8. In another place during the deposition, Granger stated he did not know if his foot went into the gap between the Stall Three roof and the angle iron. R. Doc. 44-4 at 5. At a third

point in the deposition, Granger stated that he could not conceive of any activity by Bollinger which caused or contributed to his injury. R. Doc. 36-3 at 9. The case is set for trial to begin on September 26, 2016.

Several motions *in limine* have been filed seeking to exclude certain witnesses and testimony and to exclude evidence of a prior arrest. The Court will discuss the applicable law and the motions in turn.

## II. APPLICABLE LAW

### A. *Daubert* Legal Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Rule 702 is in effect a codification of the United States Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). In *Daubert*, the Supreme Court held that trial courts should serve as gatekeepers for expert testimony and should not admit such testimony without first determining that the testimony is both "reliable" and "relevant." *Id*. at 589.

The trial court is the gatekeeper of scientific evidence. *Daubert*, 509 U.S. at 596. It has a special obligation to ensure that any and all expert testimony meets these standards. *Id*. Accordingly, it must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether the reasoning or methodology can be properly applied to the facts in issue. *Id*. at 592–93. In making this assessment, the trial court need not take the expert's word for it. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 147 (1997). Instead, when expert testimony is demonstrated to be speculative and lacking in scientific validity, trial courts are encouraged to exclude it. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 279 (5th Cir. 1998).

In satisfying its "gatekeeper" duty, the Court will look at the qualifications of the experts and the methodology used in reaching their opinions and will not attempt to determine the accuracy of the conclusion reached by the expert. The validity or correctness of the conclusions is for the fact finder to determine after the *Daubert* analysis.

Scientific testimony is reliable only if "the reasoning or methodology underlying the testimony is scientifically valid," meaning that such testimony is based on recognized methodology and supported by appropriate validation based on what is known. *Daubert*, 509 U.S. at 592–93. In *Daubert*, the Supreme Court set forth a non-exclusive list of factors to consider in determining the scientific reliability of expert testimony. *Id*. at 593–95. These factors are: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) the general acceptance of the methodology in the scientific community. *Id*. Whether some or all these factors apply in a particular case depends on the facts, the expert's particular expertise, and the subject of his testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 138 (1999).

In addition to the five factors laid out in *Daubert*, a trial court may consider additional factors in assessing the scientific reliability of expert testimony. *Black v. Food Lion, Inc.*, 171 F.3d 308, 312 (5th Cir. 1999). Some of these factors may include: (1) whether the expert's opinion is based on incomplete or inaccurate dosage or duration data; (2) whether the expert has identified the specific mechanism by which the drug supposedly causes the alleged disease; (3) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; (4) whether the expert has adequately accounted for alternative explanations; and (5) whether the expert proposes to testify about matters growing directly out of research he or she

has conducted independent of the litigation. *See, e.g.*, *id.* at 313; *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 278–79 (5th Cir. 1998); *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1114 (5th Cir. 1991); *Newton v. Roche Labs., Inc.*, 243 F. Supp. 2d 672, 678 (W.D. Tex. 2002).

Scientific testimony is relevant only if the expert's reasoning or methodology can be properly applied to the facts in issue, meaning that there is an appropriate fit between the scientific testimony and the specific facts of the case. *Daubert*, 509 U.S. at 593. However, scientific evidence is irrelevant, when there is too great an analytical gap between the data and the opinion proffered. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The party seeking to introduce the expert testimony bears the burden of demonstrating that the testimony is both relevant and reliable. *Moore*, 151 F.3d at 275–76. The requirement of reliability does not strictly bind an expert within the proffered field of expertise; an expert may also testify concerning related applications of his or her background. *Slatten, LLC v. Royal Caribbean Cruises Ltd.*, No. 13-673, 2014 WL 5393341, at *2 (E.D. La. Oct. 23, 2014) (citing *Wheeler v. John Deere Co.*, 935 F. 2d 1090, 1100 (10th Cir. 1991). The focus is not on the result or conclusion, but on the methodology. *Moore*, 151 F.3d at 275–76. The proponent need not prove that the expert's testimony is correct, but must prove by a preponderance of the evidence that the methodology used by the expert was proper. *Id*.

### B.     Federal Rule of Evidence 403

Under the Federal Rules, relevant evidence is generally admissible, with relevance defined as having any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Fed. R. Evid. 401, 402. However, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues,

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. " 'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note.

### III. PRESENT MOTIONS

#### A. Motions to Exclude Expert Testimony of Robert E. Borison

#### 1. Parties' Arguments

In Defendant Bisso's Motion to Exclude Borison, Bisso argues that his testimony should be excluded because it will not assist the trier of fact in understanding the evidence or determining the facts at issue. R. Doc. 67-1 at 1. Bisso does not challenge Borison's qualifications, but instead contends his report and testimony are unhelpful because they relate solely to common-sense determinations that the trier of fact is capable of making without any assistance from expert testimony. R. Doc. 67-1 at 7–8. In support of this argument, Bisso cites to other decisions within this Court where Borison's testimony was excluded because it "intrude[d] upon the domain of common sense matters upon which the Court requires no expert assistance." R. Doc. 67-1 at 9 (citing *Marshall v. Supreme Offshore Servs., Inc.*, No. CIV.A. 10-3198, 2011 WL 6258487, at *2 (E.D. La. Dec. 15, 2011). Bisso also contends that all of Borison's testimony relates to causation, which is a determination that should be left to the trier of fact. R. Doc. 67-1 at 12.

Defendant Bollinger also filed a Motion to Exclude Borison. R. Doc. 69-1. Like Bisso, Bollinger agrees that Borison's testimony and conclusions are matters of common sense that should be decided by the trier of fact. R. Doc. 69-1 at 1. Additionally, Bollinger argues that Borison's third finding—that Bollinger "failed to abate a tripping hazard that they knew or

6

should have known existed"—is an improper legal conclusion. R. Doc. 69-1 at 4. Specifically, Bollinger argues that this testimony improperly concludes that Bollinger had a duty to remediate the alleged hazardous condition.

Plaintiff responds that Defendants' criticisms of Borison's testimony are issues for cross-examination, and go to the weight rather than the admissibility of his testimony. R. Doc. 86 at 1. Plaintiff begins by summarizing Borison's three conclusions as follows: (1) Bisso failed to remove or modify the weldged flange from a known walkway on the roof of welding Stall Two; (2) Bisso failed to provide stairs the adequate length leading to Stall Two; and (3) Bollinger failed to abate a tripping hazard they knew or should have known existed. R. Doc. 86 at 2. Plaintiff explains that the average lay person would have no knowledged of the safety standards Borison relied on in reaching these conclusions, thus, his conclusions and testimony would be helpful to the trier of fact. Additionally, Plaintiff disagrees within Bollinger's contention that Borison's third finding embraces a legal conclusion. R. Doc. 86 at 9. Instead, Plaintiff argues that a "safety expert's opinion about who has a safety responsibility is not a legal opinion." R. Doc. 86 at 10.

### 2. Analysis

Defendants argue that Borison's testimony is not relevant, because the trier of fact can use common sense to reach the same conclusions. However, this case is more complicated than a standard slip and fall, and the Court finds Borison's testimony is relevant as it may be helpful to the trier of fact. To be relevant, expert testimony must assist the trier of fact in understanding or determining a fact at issue. *Bocanegra v. Vicmar Servs.*, Inc., 320 F.3d 581, 584 (5th Cir. 2003). Here, the disputed facts relate to the safety regulations and responsibilities on a welding vessel. While the average juror may have a "common-sense" understanding of a regular slip and fall, it

is unlikely a juror has spent time on a welding barge, or has experience with the safety regulations governing such vessels. "[A] court should not allow its 'gatekeeper' role to supersede the traditional adversary system, or the jury's place within that system." *Hooks v. Nationwide Hous. Sys.*, LLC, No. CV 15-729, 2016 WL 3667134, at *6 (E.D. La. July 11, 2016).

As Plaintiff explains, Borison has special knowledge and experience evaluating vessel safety procedures. While Defendant may be able to show that his conclusions are in part based on common sense, this goes more to the weight than the admissibility of Borison's testimony. As such, Defendants are free to refute this testimony with "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." Daubert, 509 U.S. at 596.

Addressing Bollinger's argument that Borison makes improper legal conclusions, the Court finds that the testimony at issue does not amount to legal conclusions, but instead states the facts according to Borison. "[A]n expert may never render conclusions of law." *Goodman v. Harrison Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009). In his report, Borison explains that the angle iron presented a tripping hazard, and it was not removed or highlighted. This is not an improper legal conclusion, as it does not intrude on the fact finder's role of applying the law to the facts. *See Richardson v. SEACOR Lifeboats*, LLC, C.A. No. 14-1712, 2015 WL 2193907, at *3 (E.D. La. May 11, 2015). While the Court finds Borison's opinions pass *Daubert* scrutiny, the parties should be aware that the Court will not allow Borison to testify regarding any legal conclusions at trial.

### B. Motion *in limine* to Exclude Testimony of Kenneth Boudreaux, Ph. D.

#### 1. Parties' Arguments

Plaintiff seeks to exclude the testimony of Dr. Kenneth Boudreaux on the grounds that his opinions are based on outdated and therefore unreliable information and that his opinions are

more prejudicial than probative under Rule 403. R. Doc. 71-1 at 1. First, Plaintiff contends that Dr. Boudreaux uses the same "cookie-cutter" report in many of his cases, merely changing the Plaintiff's name for this case. R. Doc. 71-1 at 2. Plaintiff contends that Dr. Boudreaux's calculations regarding Plaintiff's work life expectancy are unreliable because they are based on a 1986 report from the U.S. Department of Labor. R. Doc. 71-1 at 2. Plaintiff argues that this unreliable data should require the Court to exclude Dr. Boudreaux's opinions under *Daubert.* R. Doc. 71-1 at 5. In particular, Plaintiff avers that the thirty-year-old data presents "too great an analytical gap between the data and the opinion proffered" to be admissible. (quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Additionally, Plaintiff contends that Dr. Boudreaux's testimony is more prejudicial than probative and is therefore inadmissible under Federal Rule of Evidence 403. R. Doc. 71-1 at 3. Specifically, Plaintiff argues that the age of the data eliminates any probative value of the report, and is only offered "for the sake of its prejudicial effect." R. Doc. 71-1 at 4.

Defendants respond in a joint opposition that Dr. Boudreaux is a widely respected economist with over forty-five years of teaching experience. R. Doc. 83 at 1. Defendants contend that because Plaintiff seeks damages for loss of future earnings, testimony regarding his potential future earnings is relevant to this case. R. Doc. 83 at 2. Defendants point out that while Plaintiff criticizes Dr. Boudreaux's reliance on a 1986 report from the U.S. Department of Labor, the Plaintiff's economic expert "is using older data than that used by Dr. Boudreaux." R. Doc. 83 at 3. Defendants contend that if Dr. Boudreaux is excluded from testifying based on the age of his data, Plaintiff's expert must be excluded as well.

In addition, Defendants dispute that Dr. Boudreaux's report is merely a "cookie cutter" report, but aver while economists often use similar standards in calculating benefits, and the

calculations in this report are unique to the Plaintiff. R. Doc. 83 at 4. Finally, Defendants contend that Dr. Boudreaux's reliance on thirty-year-old data goes to the weight rather than the admissibility of his conclusions. R. Doc. 83 at 6.

### 2. Analysis

"Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence." *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998); Fed. R. Evid. 702. However, even if a witness qualifies as an expert under *Daubert,* his testimony must still meet the balancing test of Federal Rule of Evidence 403. *See United States v. Posado*, 57 F.3d 428, 435 (5th Cir. 1995). Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

In applying the foregoing law to the proposed expert testimony of Dr. Boudreaux, the Court finds that *Daubert* is satisfied and Dr. Boudreaux may testify at trial. Plaintiff argues that a thirty-year-old report is unreliable, while at the same time, explaining that Dr. Boudreaux frequently relies on this same report in many similar cases. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) (citing *Dixon v. International Harvester Co.*, 754 F.2d 573, 580 (5th Cir. 1985)). While the Court recognizes there may be questions regarding the validity of Dr. Boudreaux's conclusions based on the age of the underlying data, it finds that the Plaintiff's objection goes to the weight of the evidence as opposed to methodology used by Dr.

Boudreaux. Any concerns or challenges Plaintiff has regarding Dr. Boudreaux's testimony or the weight to be given to his testimony may be raised during cross-examination.

### C. Motion *in limine* to Exclude Documents and Witnesses

#### 1. Parties' Arguments

It appears that the Plaintiff has been recently arrested for sexual battery of a juvenile. Plaintiff has filed a motion to exclude any evidence or testimony relating to the Plaintiff's recent arrest. R. Doc. 75-3 at 2. Specifically, Plaintiff argues that any witnesses who may testify regarding this arrest should be excluded from Defendants' witness list, and any references to the arrest should be excluded from trial. R. Doc. 75-3 at 1. According to Plaintiff, a warrant was issued for his arrest on April 13, 2016, after his brother and sister-in-law accused him of sexually assaulting his niece. R. Doc. 75-3 at 2. Plaintiff explains that since that date, he has not been charged with the crime. Plaintiff argues that the arrest is in no way relevant to this case, and is extremely prejudicial. R. Doc. 75-3 at 3. As such, he contends that any evidence regarding his arrest is inadmissible under Federal Rule of Evidence 403. R. Doc. 75-3 at 8. Additionally, Plaintiff contends that any such testimony would be inadmissible hearsay. R. Doc. 75-3 at 8. Plaintiff requests that anyone appearing on Defendants' behalf should be "strictly prohibited from making any reference to the accusations or 'criminal records.'" R. Doc. 75-3 at 9.

Defendants contend that any evidence regarding the Plaintiff's arrest is relevant, as any future incarceration would substantially decrease his earning potential and therefore damages in this case. R. Doc. 87 at 1. First, Defendants argue they are entitled to cross-examine Plaintiff's economist on Plaintiff's future earning capacity if he is incarcerated as a result of these allegations. R. Doc. 87 at 3. Defendants contend that the jury is capable of objectively viewing this information and "considering [the] evidence for the purpose it is admitted by the Court." R.

11

Doc. 87 at 4. Second, Defendants suggest that the Court could issue a limiting instruction that would prevent any prejudicial effect based on this testimony. R. Doc. 87 at 5. Finally, Defendants contend that any testimony would not be hearsay, as it would be based on the witnesses' own observations. R. Doc. 87 at 6.

### 2. Analysis

Under the Federal Rules, relevant evidence is generally admissible. Relevance is defined as having any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. Fed. R. Evid. 401, 402. However, even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Generally, courts apply this balancing test to determine the admissibility of criminal convictions. However, the evidence at issue in this case is not a criminal conviction, or even a formal charge. Instead, Plaintiff was arrested for allegations of criminal behavior. R. Doc. 75-4.

The Supreme Court has explained that "[t]he mere fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any misconduct . . . When formal charges are not filed against the arrested person and he is released without trial, whatever probative force the arrest may have had is normally dissipated." *Schware v. Board of Bar Examiners of the State of New Mexico,* 353 U.S. 232, 241 (1957). The arrest at issue here would be particularly prejudicial in light of its subject matter. Numerous courts within this district have excluded evidence relating to an arrest because "[e]vidence of the arrest itself would be prejudicial at trial because the arrest did not lead to formal charges." *United States v. Prejean*,

429 F. Supp. 2d 782, 790 (E.D. La. 2006) (holding that while the facts leading up to the arrest were directly relevant to the alleged drug trafficking at issue, the arrest was unduly prejudicial under Rule 403 and therefore inadmissible); *McIntyre v. Bud's Boat Rental, L.L.C.*, No. CIV.A. 02-1623, 2003 WL 22174236, at *4 (E.D. La. Sept. 9, 2003) (excluding arrest evidence because of the "significant danger of unfair prejudice.").

While this evidence may be relevant for limiting the Plaintiff's future earning capacity, the Court finds it does not pass the balancing test of Rule 403. In *Jordan v. Ensco Offshore Co.*, this Court excluded evidence of a criminal **conviction** despite Defendant's arguments that the conviction was relevant to prove the Plaintiff's future earning potential. No. CV 15-1226, 2016 WL 2864380, at *2 (E.D. La. May 16, 2016) Citing *McIntyre,* the Court explained that even if evidence related to the Plaintiff's conviction for arson and later arrest for being a felon in possession of a firearm was relevant to calculating his future earning potential, such evidence did not pass Rule 403's balancing test. *Id*. Because the probative value of the evidence did not substantially outweigh the danger of unfair prejudice, evidence of the conviction and arrest was excluded from trial. *Id*. Here, Defendants make an identical argument—except the arrest is not nearly as probative as the conviction in *McIntyre,* and far more prejudicial. As such, any evidence or testimony related to Plaintiff's arrest shall be excluded under Rule 403.

### IV.     CONCLUSION

For the aforementioned reasons, **IT IS ORDERED** that Bisso Marine's Motion to Exclude the testimony of Robert Borison (R. Doc. 67) and Bollinger Shipyard's Motion *in Limine* to Exclude the Testimony of Robert Borison (R. Doc. 69) are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Granger's Motion *in Limine* to Exclude the Expert Report and Trial Testimony of Kenneth Boudreaux, Ph. D. (R. Doc 71) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Granger's Motion *in Limine* to Exclude Documents and Witnesses (R. Doc. 75) is **GRANTED**.

New Orleans, Louisiana, this 6th day of September, 2016.

_____
UNITED STATES DISTRICT COURT JUDGE