UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STEVEN GRANGER** * | **CIVIL ACTION** |
| **VERSUS** * | **NO. 15-477** |
| **BISSO MARINE**, and **BOLLINGER SHIPYARDS** | **SECTION "L" (3)** * |

### ORDER & REASONS

Before the Court is Defendant Bollinger Shipyard's ("Bollinger") Motion for Summary Judgment, R. Doc. 63. Defendant Bisso Marine ("Bisso") and Plaintiff Granger oppose the Motion. R. Docs. 84, 81. Having reviewed the Parties' briefs, the applicable law, and the statements made at oral argument, the Court now issues this Order & Reasons.

   I.   BACKGROUND

This case involves a trip and fall accident on June 13, 2014 aboard the pipe-laying barge, L/B Super Chief, owned by Defendant Bisso Marine. R. Doc. 36-2 at 1–2. At the time of the incident, Plaintiff, Granger was an employee of Power Dynamics, LLC, ("PDI"). R. Doc. 36-2 at 1. PDI was hired by Bisso Marine to perform the installation of hydraulic/mechanical systems on the Super Chief. R. Doc. 36-2 at 1. Granger was a member of the crew assigned to the hydraulic/mechanical systems project.

Bisso Marine also contracted with Defendant Bollinger Shipyards ("Bollinger") to perform renovations and modifications to the Super Chief in preparation for upcoming jobs. R. Doc. 36-2 at 2. The Super Chief was berthed at Bollinger's shipyard in Amelia, Louisiana, while the two contractors performed the work. There was no legal relationship between PDI and Bollinger other than that of fellow-contractors hired to perform separate services aboard the Super Chief. R. Doc. 36-2 at 2.

1

Bollinger was instructed to remove, refabricate, and reinstall the roof of welding Stall Three, one of four separate welding stalls on the Super Chief. R. Docs. 36-2 at 2; 36-3 at 4. Bollinger was not hired to repair, modify, or otherwise renovate the roof of the adjacent Stall Two. After Bollinger reinstalled the roof of Stall Three, the new roof was approximately 2.5 inches higher than the roof of Stall Two, creating a gap between the Stall Three roof and an angle iron attached to the roof of Stall Two. R. Doc. 46 at 3. The angle iron itself jutted out approximately three inches above the roof of Stall Two. R. Doc. 46 at 3.

On the date of the accident, contractors PDI and Bollinger were both performing work in the vicinity of the four separate welding stalls. Granger came aboard the Super Chief in order to install plumbing in each of the welding stalls in his capacity as a PDI employee. R. Doc. 36-3 at 4. Plaintiff Granger allegedly sustained injuries after he tripped while walking from the roof of Stall Two towards the roof of Stall Three. In his Complaint, Granger alleges that the replacement of the Stall Three roof and the resulting height differences between the two adjacent roofs created a trip hazard, and claims he caught his foot in the gap created between the angle iron attached to the roof of Stall Two and the new raised height of the rooftop of Stall Three. R. Doc. 1 at 2-3. However, in his deposition Granger stated that he believed "the thing that contributed to my accident was the angle iron [on Stall Two] not being removed properly," and denied that the height difference between the two stall roofs contributed to the fall. R. Doc. 36-3 at 8. Later in the deposition, Granger stated that he did not know whether or not his foot went into the gap between the Stall Three roof and the angle iron. R. Doc. 44-4 at 5. At a third point in the deposition, Granger stated that he could not conceive of any activity by Bollinger which caused or contributed to his injury. R. Doc. 36-3 at 9.

**II.     PRESENT MOTION**

**A. Defendant Bollinger's Motion for Summary Judgment**

Bollinger distinguishes between the duties owed to plaintiffs by barge owners and contractors, noting that while vessel owners owe longshoremen legal duties pursuant to the Longshore and Harbor Worker's Act, contractors working aboard vessels owe fellow-contractors only a duty of reasonable care. R. Doc. 63-1 at 2. Bollinger claims that any duty to inspect and warn contractors about tripping hazards on the vessel belonged to owner Bisso alone. Therefore, Bollinger asserts that it owed no duty to inspect Bisso's vessel to ensure there were no tripping hazards in the area Plaintiff and his co-employees were working. R. Doc.63-1 at 8. Additionally, Bollinger argues that Granger cannot claim Bollinger owed a duty, because Bollinger had already completed its work and left the work-site at the time of Granger's accident. Bollinger cites case law suggesting that an "independent contractor's duty ceases when it has completed a project [and] left the work site . . . ." R. Doc. 63-1 at 12 (quoting *Stokes v. Freeport-McMoran, Inc.*, No. 14-1538, 2015 WL 8276240, at *3 (E.D. La. Dec. 7, 2015) (internal quotations omitted)).

After conducting discovery, Bollinger claims there is no question of material fact as to the circumstances of the injury. Granger testified that he was on the roof of Stall Two when he tripped over the angle iron that was welded to the roof of Stall Two. R. Doc. 63-1 at 9. Granger had not stepped onto the roof of Stall Three when his foot hit the angle iron and he fell. R. Doc. 63-1 at 10. Bollinger asserts that there is no evidence or testimony to the contrary. R. Doc. 63-1 at 10. Bollinger therefore concludes that Granger cannot hold Bollinger liable, because the scope of Bollinger's work area (and thereby its duty) was restricted to the roof of Stall Three.

Bollinger claims the case against it should be dismissed because, as a matter of law, Bollinger did not create an unreasonable risk of harm or hazardous condition that was a proximate

3

cause of Granger's injuries and because Bollinger did not otherwise breach its duty of reasonable care. R. Doc. 63-1 at 12. Bollinger also asserts that no allegation had been made that its work on Stall Three was performed unsatisfactorily or that the roof was reinstalled incorrectly. R. Doc. 63-1 at 11. Bollinger claims that Bisso's approval and acceptance of its work on Stall Three should preclude any recovery against Bollinger for claims arising from that work. R.Doc. 63-1 at 11-12.

### B. Defendant Bisso's Opposition to Bollinger's Motion for Summary Judgment

Defendant Bisso opposes Bollinger's motion. First, Bisso argues that there is no additional information in this case that should change the Court's prior ruling on Bollinger's previous Motion for Summary Judgment. Next, Bisso claims that Bollinger admitted it knew about the angle iron as well as the height difference between the two roofs, but did not report to Bisso that either represented a tripping hazard despite being in the best position to do so. R. Doc. 84 at 3-4. Bisso alleges that Bollinger knew the area between the two roofs was to be used as a walkway and made the decision to remove the safety barrier allowing people to walk through the area after completing the installation of the new roof on Stall Three, yet failed to advise Bisso of known hazards in the area. R. Doc. 84 at 4, 8-9.

Bisso argues it is unclear whether Granger tripped solely because of the angle iron or instead because of the gap created between the roofs. R. Doc. 84 at 5-6. Accordingly, Bisso claims that whether the height differences in the area between Stall Two and Stall Three presented an unreasonably dangerous hazard is a disputed issue of material fact that is inappropriate for summary judgment. R. Doc. 84 at 5-6. Bisso denies that there was an unsafe condition on the vessel, but argues that if Plaintiff does ultimately prove the walkway between the stalls was unreasonably dangerous, this area would have been within the scope of Bollinger's work area and

Bollinger would be liable for failing to warn Bisso or fellow contractors about the hazardous conditions before opening the walkway to pedestrian access. R. Doc. 84 at 4-5.

Bisso disputes that its acceptance of Bollinger's work would relieve Bollinger of liability, and notes that it did not accept Bollinger's repairs until weeks after Plaintiff's accident. R. Doc. 84 at 10. Bisso also claims that the height difference between the two roofs after Bollinger completed the reinstallation raises the factual question of whether Bollinger's repair work on the roof of Stall Three was performed properly. R. Doc. 84 at 10.

### C. Plaintiff Granger's Opposition to Bollinger's Motion for Summary Judgment

Plaintiff opposes Bollinger's motion and reiterates many of the same arguments he made in his opposition to Bollinger's previous motion for summary judgment. First, Plaintiff rejects Bollinger's arguments regarding the Supreme Court's decision in *Scindia Steam Navigation Co,* and contends those duties only apply to ship owners, and not Bollinger. R. Doc. 81 at 2. (citing *Scindia Steam Nav. Co. v. De Los Santos,* 451 U.S. 156, 161 (1981)). Instead, Plaintiff urges that its claims against Bollinger are solely based on Louisiana law, including the Civil law concept of *garde*. R. Doc. 81 at 3-4. Specifically, Plaintiff argues that the "touchstone" of *garde* is "usage, direction, and control," and here, in repairing the roof of welding Stall Three, Bollinger "had to assume control over an area of the vessel which included part of welding Stall Two's roof." R. Doc. 81 at 5. Thus, according to Plaintiff, because this was the area where the accident occurred Bollinger had the *garde*.[1]

---

[1] It appears that Plaintiff meant to argue Bollinger had *garde* over the area, but his motion actually says the opposite. "[B]y having and exercising the power to preclude the entry of others into this work area, and self-admittedly not returning control of the area back to Bisso until ten (10) days after Plaintiff's accident, Bollinger had substantial power of 'usage, direction, and control.' Accordingly, Bisso had the *garde*." R. Doc. 81 at 5.

Plaintiff agrees that Bollinger owed Plaintiff a duty to exercise reasonable care, but argues that the three inch raised roof flange (a.k.a. the angle iron) between Stall Two and Stall Three presented a tripping hazard, which constituted an unreasonable risk of harm. R. Doc. 81 at 7. Plaintiff claims that during the period when Bollinger had removed Stall Three's roof before repairing and reinstalling it, Bollinger erected a barricade to prevent people from falling into the gap created by the removed roof that was placed directly on top of the raised roof flange. R. Doc. 81 at 7. Plaintiff concludes that the area of the raised roof flange between the two stalls was thus within Bollinger's scope of work during the period that Stall Three's roof was being repaired and reinstalled. R. Doc. 81 at 7.

Plaintiff disputes that the area between Stall Two and Stall Three should be characterized as Plaintiff's "work area," which would then place liability on Power Dynamics. R. Doc. 81 at 9. Instead, Plaintiff agrees with Bollinger that Bisso had a duty to warn Plaintiff regarding any hazardous conditions in areas under Bisso controlled, but contends that the question of who had control over the work area is still disputed, and thus remains an issue to be decided at trial. R. Doc. 81 at 10. Plaintiff also disputes Bollinger's contention that Bollinger did not control the work area, that Plaintiff was injured outside of the work area, and that Bisso had accepted control of Bollinger's work area at the time of the accident. R. Doc. 81 at 14.

### III.    LAW AND ANALYSIS

#### A.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the

entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *see also Anderson*, 477 U.S. at 249-50. In ruling on a summary judgment motion, however, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

### B.  Negligence under the Louisiana Civil Code

Plaintiff's negligence claim against Bollinger is governed by Louisiana Civil Code Article 2315, which provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Under Louisiana law, allegations of negligence are reviewed

using an inquiry known as a duty-risk analysis. *See Lemann v. Essen Lane Daiquiris, Inc.*, 923 So.2d 627, 632–33 (La. 2006). In order to prevail on a negligence claim, plaintiffs must establish that:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

*Id.* at 633.

Whether an alleged tortfeasor owes a duty to protect others from a particular risk of harm is a legal question to be determined by the Court, and, in making this threshold determination, the Court must look to the particular facts and circumstances surrounding the accident. *Ellison v. Conoco*, 950 F.2d 1196, 1205 (5th Cir. 1992). As an independent contractor, Bollinger had a duty to its fellow contractors to exercise reasonable care in the performance of its duties, but did not owe any special duty to protect the employee of another independent contractor. *See, e.g., McCarroll v. Seatrax Servs., Inc.*, No. CIV.A. 12-2402, 2013 WL 3872219, at *4 (E.D. La. July 24, 2013) *aff'd sub nom. McCarroll v. Wood Grp. Mgmt. Servs., Inc.*, 561 F. App'x 407 (5th Cir. 2014); *Parker v. Petroleum Helicopters, Inc.*, No. Civ. A. 99–1139, 2002 WL 461655 at *1 n. 2 (E.D. La. Mar. 20, 2002); *Joyner v. Ensco Offshore Co.*, Civ. A. No. 99–3754, 2001 WL 118599 at *4 (E.D. La. Feb. 9, 2001); *Verdin v. Kerr McGee Corp.*, Civ. A. No. 95–1483, 1997 WL 39308 at *2 (E.D. La. Jan. 30, 1997).

The duty to exercise reasonable care includes an obligation to refrain from creating an unreasonable risk of harm or a hazardous condition. *See Stokes v. Freeport-McMoran, Inc.*, No. 14-1538, 2015 WL 8276240, at *3 (E.D. La. Dec. 7, 2015); *Joyner*, 2001 WL 118599 at *4. The duty of reasonable care does not encompass a duty to eliminate a preexisting unsafe condition

8

present on a work site over which the independent contractor does not exercise control. *See Reeves v. Pat Tank, Inc.*, 2010 WL 173603, at *4-5 (W.D. La. Jan. 19, 2010); *see also Lafont v. Chevron, U.S.A., Inc.*, 593 So.2d 416, 420-21 (La. App. 1 Cir. 1991) ("As it was not within [the independent contractor]'s power to change the allegedly unsafe method of operation, the most that could be expected would be to inform [the owner] of the problem."). A plaintiff's "experience and familiarity with the premises and its dangers" is relevant to the duty-risk analysis, and a defendant has no duty to correct or warn experienced workers about the risks presented by site conditions that were readily apparent. *Fleming v. M. Bruenger Co.,* No. CIV. A. 94-1824, 1995 WL 324604, at *1-2 (E.D. La. May 30, 1995).

### C. Discussion

The Court finds that Bollinger was responsible as a matter of law for properly repairing the roof of Stall Three, and a genuine issue of material fact exists as to whether Bollinger negligently increased the gap between Stall Two and Stall Three, and thereby exacerbated the danger posed by the angle iron. Additionally, there are questions of material fact regarding whether Bollinger removed a safety barrier allowing access over the two stalls, thereby creating a duty to inform Bisso of any potential tripping hazards. A contractor owes no duty to warn a fellow contractor of a preexisting tripping hazard, or to correct said tripping hazard, if the hazard was not under the contractor's control. *See Reeves v. Pat Tank, Inc.*, 2010 WL 173603, at *4-5 (W.D. La. Jan. 19, 2010). However, a contractor owes a reasonable duty of care to others in the performance of his or her work. *See McCarroll* 2013 WL 3872219, at *4. The facts indicate that Granger tripped on the angle iron, and while Bollinger did not place the angle iron or enter into a relationship with either Granger or Bisso where it owed a duty to remove the angle iron, it may have had a duty to alert Bisso that either the angle iron or the height difference between the roofs created a tripping

hazard if and when it re-opened the walkway.

While Bollinger disputes that they had control over Stall Two, Bollinger did owe a duty to warn of any tripping hazard under its control or the additional risks of a pre-existing hazard due to Bollinger's actions. The Court finds that a question of fact exists as to whether Bollinger may have negligently increased the gap between Stall Two and Stall Three, an area that could have been under Bollinger's control. A large gap between Stall Two and Stall Three could arguably have caused Granger to approach the step (and therefore the angle iron) in an unsafe way, and this possibility is a question of fact unsuitable for summary judgment. Additionally, there is a question of fact as to whether Bollinger cut the barrier which previously blocked the pathway between Stall Two and Stall Three. If Bollinger did in fact remove the barricades and open the previously blocked pathway, it may have had a duty to warn Bisso about potential hazards in the area. At this stage of the proceedings there does exist genuine issues of material fact, which must be determined by the fact finder. Therefore, summary judgment is inappropriate.

### IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Bollinger's Motion for Summary Judgment is **DENIED.**

New Orleans, Louisiana, this 6th day of September, 2016.

_____
UNITED STATES DISTRICT JUDGE